## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHANDONG WIECO GARMENT CO. LTD, | ) ) ) | Civil Action No: |
| *Plaintiff,* | ) ) | 17-cv-11645 (PGS)(DEA) |
| | ) | |
| v. | ) ) | |
| | ) | **MEMORANDUM** |
| VERTICAL SOURCE, INC., *et al.*, | ) ) | **AND** |
| | ) | **ORDER** |
| *Defendants.* | ) ) ) ) | |

Presently before the Court is Defendants Vertical Source, Inc, Christopher R. Neary, and

Charles P. Moran's Motion for Partial Dismissal of Plaintiff Shandong Wieco Garment Company's

Amended Complaint pursuant Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11). The Court

has diversity jurisdiction over this matter. For the reasons discussed herein, Defendants' Motion

is granted in part and denied in part.

### BACKGROUND

At its core, the present matter is a basic breach of contract case, which Defendants do not

challenge. In its Amended Complaint, Plaintiff Shandong Wieco (hereinafter, "Wieco") alleges

that Defendants Vertical Source, Inc, Christopher R. Neary, and Charles P. Moran failed to make

full payment of orders prepared by Wieco. In addition to the breach of contract claim, Wieco's

Amended Complaint asserts nine other claims; however, at oral argument, Wieco withdrew Counts

II (Action on the Book Account); IV (Identification of Goods to Contract); V (Wrongful

Revocation of Acceptance of Goods); and IX (Unjust Enrichment). Wieco's remaining claims

assert various contract-based causes of action: (I) breach of contract; (III) promissory estoppel;

(VI) breach of fiduciary duty; (VII) fraud in the inducement; (VIII) breach of the covenant of good

1

faith and fair dealing; and (X) unjust enrichment. Since this is a Motion for Partial Dismissal of the Complaint, and Defendants do not object to Count I (Breach of Contract), the Court limits its discussion to Counts III (promissory estoppel), VI (breach of fiduciary duty), VII (fraud in the inducement), VIII (breach of the covenant of good faith and fair dealing), and X (unjust enrichment).

This case arises from a contractual dispute between a foreign garment manufacturer and domestic garment retailer. Wieco is a Chinese-based company engaged in the business of manufacturing and selling garment merchandise, and Vertical Source is a New Jersey-based trading company, engaged in the purchase and sale of garment merchandise. (Amended Complaint at ¶¶ 1, 5).

According to the Amended Complaint, on May 15, 2014, Vertical Source placed purchase orders with Wieco for the delivery of Rossignol brand outdoor jackets and pants. (*Id.* at ¶ 11).[1] Five months later, on October 26 and 28, 2014, Wieco delivered the Rossignol shipment to Vertical Source. (*Id.* at ¶ 16). Although Vertical Source accepted the shipment, it refused to pay Wieco the full value of the shipment, claiming a portion of the shipment was flawed; instead, Vertical Source offered to "split the difference" of the balance and offered to pay Wieco $26,512.50. (*Id.* at ¶ 19).

Two days later, October 30, 2014, Vertical Source placed another order with Wieco for the shipment of three separate styles of outdoor jackets and vests. (*Id.* at ¶¶ 2, 7). The order was worth $357,049.60 and memorialized into three separate commercial invoices: (1) 2014HT007-2 (the "Cloudveil Items"); (2) 2014HT008-2 (the "Cirq/Clymb Items"); and (3) 2014HT008-3 (the "Ultralight Items"). (*Id.* at ¶ 7; ECF No. 7-1 ("Commercial Invoices")). Wieco shipped the Cloudveil and Cirq/Clymb Items the following month, November 20, 2014, which Vertical Source

---

[1] The invoice for this order is not attached to the Amended Complaint, nor does Wieco assert the value of this shipment.

accepted. (*Id.* at ¶¶ 12-15); however, Vertical Source did not immediately pay Wieco for the goods.

Instead, on January 16, 2015, Vertical Source issued Wieco a "Letter of Guarantee," promising to:

(1) pay in full the Cloudveil and Cirq/Clymb invoices by January 31, 2015; (2) pay for the

Ultralight order (which remained stored in Wieco's warehouse); and (3) arrange for shipment of

the Ultralight order. (*Id.* at ¶ 20). Wieco claims Vertical Source never fulfilled its promise. (*Id.* at

¶ 21).

Over the next year, the parties exchanged various emails, discussing Vertical Source's

outstanding balance and Wieco's demand for payment. (*Id.* at ¶ 22). According to the Amended

Complaint, on June 3, 2015, Charles P. Moran, a New Jersey citizen and Vertical Source's Director

of Operations, emailed Wieco, claiming:

> We are committed to getting the factory paid for the entire amount of the original
> letter of guarantee of $273,132.10 less the $50,000.00 already paid or $223,132.10
> . . . [and] We will commit to getting the balance of $188,132.10 to Mr. Sun before
> the end of this year. If this is acceptable, we will put together a new Letter of
> Guarantee to Mr. Sun.

(*Id.* at ¶ 24). In this email, Moran also assured Wieco that it would make good on its outstanding

balance, and complete the Ultralight order. (*Id.* at ¶ 25).

Wieco responded the same day, demanding monthly installments of $50,000, and disputed

Vertical Source's claim that a portion of the Rossignol shipment was flawed:

> I understand [the order was] not paid due to fabric color shade of which fabric
> supplier would be 'HFI'. Actually the factory is innocent on this issue as it's been
> shaded after making/shipping the garments. Robert confirmed to get compensation
> from 'HFI' soon. Pls check and confirm.

(*Id.* at ¶ 26). A subsequent email was sent that same day, wherein Wieco confirmed that Vertical

Source's outstanding balance was $223,132.10, which included $35,000 for another order made

by Vertical Source;[2] however, Wieco demanded that Vertical Source make monthly payments of

---

[2] It is unclear from the Amended Complaint what this $35,000 order relates to.

$50,000 beginning by the end of June. (*Id.* at ¶ 27). Vertical Source's President and CEO Christopher R. Neary, a New Jersey resident, responded to this email the following day, explaining that the company would need an extension for payments, since it was in "a tough cash position." (*Id.* at ¶ 29). Moran sent an email to the same effect on June 6, 2015, explaining their financial situation and that they expected to provide Wieco with "a concrete plan to move this forward" by Tuesday, June 9, 2015. (*Id.* at ¶ 31).

On June 10, 2015, Moran provided Wieco with a payment plan, wherein Vertical Source would make monthly payments of $50,000 by the end of each month, beginning in July, and a final payment of $23,212.10 by the end of November. (*Id.* at ¶ 34). Wieco accepted the payment plan, but would ship the Ultralight order only after receiving full payment for it by the end of October. (*Id.* at ¶ 35). A week later, Moran responded to this demand, claiming:

> We should be in a position to issue the Letter of Guaranty to Mr. Sun before the end of this month. . . Confirming that we are making every effort to get the ultra light jackets sold to a third party and get payment to Mr. Sun before end of October. . . Again, we appreciate your and Mr. Sun's understanding of these issues and willingness to work through them. We are in this situation because of production flaws in 2014 and poor operating procedures that lead to a loss of substantial revenues in 2015. We are also mindful of Mr. Sun's extraordinary efforts to get the 2014 production completed under difficult conditions. That is why we continue to send more orders to his factory.

(*Id.* at ¶ 37). According to the Amended Complaint, Vertical Source failed to make any payments, as set forth in their proposed payment plan; instead, on November 6, 2015, Vertical Source issued a Second Letter of Guarantee, signed by Neary and Moran, which acknowledged an outstanding balance of $330,177.10. (*Id.* at ¶¶ 39-42). The letter also provided a new payment plan, wherein Vertical Source would make monthly payments of $50,000, by the end of each month, beginning in November, and a final payment of $30,177.10 by May 31, 2016. (*Id.* at ¶ 42).

Due to continued financial difficulties, Vertical Source remitted a single payment of $25,000 to Wieco on December 21, 2015 and failed to make any payments thereafter. (*Id.* ¶¶ 43-

48). In a June 22, 2016 email, Neary conceded that Vertical Source would be unable to settle its outstanding balance with Wieco and, instead, requested that Wieco forgive its past debt and "start fresh." (*Id.* at ¶ 49).

**LEGAL STANDARD**

On a motion to dismiss for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397-98 (3d Cir. 2000).

**ANALYSIS**

## I. Promissory Estoppel and Fraudulent Inducement

The basic thrust of Plaintiff's Amended Complaint appears to be that it detrimentally relied upon Vertical Source's First and Second Letters of Guarantee, in preparing and shipping goods to Vertical Source. As such, Plaintiff asserts claims of promissory estoppel (Count III) and fraudulent inducement (Count VII). Since these letters were prepared *after* Plaintiff performed (delivered the goods), both claims fail.

5

To sustain a claim for promissory estoppel, a plaintiff must establish: "(1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise." *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978). Here, fatal to Wieco's promissory estoppel claim is that its reliance on the First and Second Letters of Guarantee do not add-up. Wieco shipped Vertical Source's orders in November 2014; however, Vertical Source's First and Second Letters of Guarantee were made in January and November 2015. As such, these guarantees are of no moment since these letters were made *subsequent* to Wieco's delivery of the goods. Therefore, Defendants' Motion to Dismiss Count III is granted.[3]

Similarly, to assert a claim of fraudulent inducement, "a plaintiff must demonstrate '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *J.H. Reid Gen. Ctr. v. Conmaco/Rector, L.P.*, No. 08-6034, 2010 U.S. Dist. LEXIS 6929, at *16 (D.N.J. Jan. 27, 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Where, as here, Plaintiff's claim alleges fraud, it must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d

---

[3] In its brief in opposition to Defendants' Motion, Wieco argues that "Vertical Source made a clear and definite promise to pay Plaintiff Wieco the reasonable and agreed upon price of the [goods]." (Pl's Brief in Opp. at 15). However, no such promise is alleged in the Amended Complaint; instead, the first such promise appears to be the January 2015 Letter of Guarantee, which, as discussed, was made after Wieco delivered the goods.

6

644, 658 (3d Cir. 1998) (citations omitted). "Under Rule 9(b), when a plaintiff is alleging fraud or mistake, he 'must state with particularity the circumstances constituting fraud or mistake,' though conditions of a person's mind, such as knowledge or intent, may be alleged generally." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.* 525 F. App'x 94, 103 n.15 (3d Cir. 2013) (quoting Fed. R. Civ. P. 9(b)).

Here, Wieco's fraudulent inducement claim fails for several reasons. First, as discussed above, Wieco cannot establish reasonable reliance of Vertical Source's Letters of Guarantee, since they were issued after Wieco performed on the orders. Second, Wieco nevertheless fails to meet the heightened pleading standard of Rule 9(b). That is, Wieco fails to plausibly aver that Defendants were actively concealing their financial struggles. If anything, the Amended Complaint demonstrates Defendants' disclosed to Wieco their financial situation. As such, fraudulent inducement is not adequately pled.

## II. Breach of Fiduciary Duty

Moran and Neary next seek dismissal of Count VI, wherein Wieco asserts a breach of fiduciary duty claim. Specifically, Wieco claims, "while insolvent and/or in the zone of insolvency, Defendants Neary and Moran diverted, dissipated, and otherwise engaged in transactions which unduly risked property, including the Wieco merchandise, under Vertical Source's control without reasonable prospect of continuing success of Vertical Source's operations." (Amended Complaint at ¶ 89). This is a conclusory statement that is not supported by any plausible fact. As such, Count VI is inadequately pled and all claims against Neary and Moran individually are dismissed. *See Iqbal*, 556 U.S. at 678.

## III. Unjust Enrichment

Defendants seek dismissal of Count X of Plaintiff's Amended Complaint, since the Uniform Commercial Code (U.C.C.) is the sole source of relief for claims arising from the sale of

goods. According to Defendants, because Count X (Unjust Enrichment) is a quasi-contract claim, it is barred by the U.C.C.

"The UCC fixes the obligations imposed on both buyers and sellers relating to the sale of goods, as well as their respective remedies for nonperformance by the other party." *Pomerantz Paper Corp. v. New Cmty. Corp.*, 25 A.3d 221, 231 (N.J. 2011) (citing N.J.S.A. §§ 12A:2-101 to -725). "In addition to the right to recover under the U.C.C., victims of fraud or unconscionable conduct possess substantial rights to recover for common-law fraud or for violations of various state and federal statutes." *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 274 (N.J. 1997). "The U.C.C. expressly provides that '[u]nless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause shall supplement its provisions.'" *Id.* (quoting N.J.S.A. § 12A:1-103). "As a general rule, courts have read these two principles of construction to mean that the UCC does not displace the common law of tort as it affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code." *New Jersey Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345-46 (3d Cir. 1982).

Here, unjust enrichment is not explicitly prohibited by the U.C.C. In fact, "courts 'have held that plaintiffs may turn to common law remedies to seek redress for an alleged harm arising from a funds transfer where [the U.C.C.] does not protect against the underlying injury or misconduct alleged.'" *ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 99 A.3d 345, 369 (N.J. 2014) (Albin, J., dissenting) (collecting cases); *see also Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1276 (11th Cir. 2003) (claims for conversion and unjust enrichment not prohibited by the U.C.C.); *Dubai Islamic bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 666 (S.D.N.Y. 2000) (same).

As such, because Count X is not in conflict with the U.C.C., Defendants' Motion to Dismiss on this basis is denied.

The Court only adds that a party may not recover for both a breach of contract and unjust enrichment. *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) ("recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties."). However, since it is early in the litigation, this claim remains until the viability of the breach of contract claim is determined. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 621-22 (D.N.J. 1996).

## IV. Implied Covenant of Good Faith and Fair Dealing

Defendants next seek dismissal of Count VIII of Plaintiff's Amended Complaint, which alleges breach of the implied covenant of good faith and fair dealing. In Count VIII, Wieco claims, "Defendants induced Plaintiff to enter into Agreements for the Goods and to deliver the Goods based upon false representations that Defendants would pay the agreed upon price for the Goods in full." (Amended Complaint at ¶ 100). Here, Defendants contend that dismissal is warranted since Wieco fails to demonstrate bad faith by Vertical Source. Wieco does not address this argument.

Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). "In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'" *Id.* (citation omitted). "In order to state a claim for breach of the implied covenant, a plaintiff must allege that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and

benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 U.S. Dist. LEXIS 107756, at \*7 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001)). In order to demonstrate that a defendant has breached this covenant, the plaintiff must demonstrate "that a defendant has acted with bad motive or intention." *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010). Here, since the covenant is implied into every contract, and neither party disputes the existence of a contract and Defendants failed to pay, the Court sees no reason to dismiss this claim at the present time.

## V. Attorney's Fees

Finally, Defendants contend that Wieco's request for attorneys' fees should be stricken, since the U.C.C. does not provide for fee-shifting.

New Jersey courts are generally reluctant to award attorneys' fees unless they are explicitly authorized by statute, court rule, or contract. *See McAdam v. Dean Witter Reynolds, Inc.*, 869 F.2d 750, 776 (3d Cir. 1990). Here, the Amended Complaint does not identify any statutory provision or contractual agreement that entitles Wieco to attorneys' fees. This being said, at this stage of litigation, the Court is reluctant to bar such relief, pending discovery; instead, it is best to address this issue at summary judgment. As such, Defendants' motion at this stage is denied.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this ____ day of _____, 2018,

**ORDERED** that Defendants' Motion for Partial Dismissal (ECF No. 11) is **GRANTED** in part and **DENIED** in part as follows:

- Claims against Defendant Christopher R. Neary and Charles P. Moran is **GRANTED** in its entirety
- Counts II, IV, V, and IX are **GRANTED**, as having been withdrawn by Plaintiff's counsel
- Count III (Promissory Estoppel) is **GRANTED**
- Count VI (Breach of Fiduciary Duty) is **GRANTED**
- Count VII (Fraud in  the Inducement) is **GRANTED**
- Count VIII (Breach of the Covenant of Good Faith and Fair Dealing) is **DENIED**
- Count X (Unjust Enrichment) is **DENIED**
- Defendants' Motion to Strike Plaintiff's Request for Attorneys' Fees is **DENIED**


_____

PETER G. SHERIDAN, U.S.D.J.